IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JAYA PRAKASH MATETI, et al.

             :

             :

  v.                    :   Civil Action No. DKC 2008-0540

             :

ACTIVUS FINANCIAL, LLC, et al.

             :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this debt collection case are: (1) a motion for reconsideration (Paper 31) filed by Defendants Activus Financial, LLC ("Activus"), Philip John Collins, Ernest Oden Faska, Neal Markowitz, and Protas Spivok & Collins, LLC ("PSC"); (2) a motion for extension of time to compel depositions (Paper 33) filed by Plaintiffs Jaya Mateti and Chaitanya Chekilla; (3) a motion to strike (Paper 40) filed by Plaintiffs; (4) a motion for summary judgment (Paper 34) filed by Defendants; and (5) a motion for summary judgment (Paper 43) filed by Plaintiffs. The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, Defendants' motion for reconsideration will be denied, Plaintiffs' motion for extension of time to compel deposition will be denied, Plaintiffs' motion to strike will be denied, Defendants' motion for summary judgment will be granted in part and denied in part, and Plaintiffs' motion for summary judgment will be denied.

## I.  Background

This dispute arises from the collection and subsequent lawsuit filed against Plaintiff Mateti in conjunction with his default on an AT&T Universal credit card.  Plaintiffs in this action are Mr. Mateti and his wife, Chaitanya Chekkilla.  Defendants are Activus, a company that purchases defaulted customer loans and collects the debts, PSC, a law firm engaged in debt collection, Phillip Collins and Neal Markowitz, attorneys for PSC, and Ernest Faska, a PSC employee.

The following facts are undisputed unless otherwise noted.  In or around July 2001, Jaya Prakash Mateti opened an AT&T Universal credit card account.  After using the credit card to purchase various goods and services, Mr. Mateti fell behind on the payments. The account eventually went into default status and was subsequently charged off.  Mr. Mateti made his last payment on the account in April 2003.  Until November 2003, monthly statements were sent to his address in Lanham, Maryland.  In December 2003, for one month only, the monthly statement was sent to Mr. Mateti's address in Springdale, Maryland.  Mr. Mateti did not receive any more credit card statements after December 2003.  Plaintiffs allege that they permanently left Maryland in December 2003 and from June 2004-July 2007 maintained a permanent residence in Lexington, Kentucky.

Citibank referred Mr. Mateti's defaulted account to Academy Collection Service, Inc. ("Academy") for collection.[1] Academy sent Mr. Mateti two collection letters in October 2004 and December 2004 to his address in Kentucky. According to Defendants, Citibank sold Mr. Mateti's account to Unifund on May 27, 2005.[2] Activus purchased from Unifund a portfolio of charged off credit card accounts on August 11, 2005. Mr. Mateti's credit card account was part of that portfolio. In August 2005, Charles Berry, the managing member of Activus, contacted Defendant Collins of PSC to pursue legal action against Mr. Mateti. The law firm sent a demand letter to Mr. Mateti on August 22, 2005 at his address in Springdale, Maryland. According to Plaintiffs, Mr. Mateti had not lived in Springdale, Maryland since 2003. Activus filed suit against Mr. Mateti in the District Court of Maryland for Prince George's County, Maryland on October 3, 2005, seeking $4,492.62 in unpaid principal and $3,889.35 in interest (29.74%) for the defaulted credit card.

A summons was issued for service on Mr. Mateti at his Springdale, Maryland address. The court mailed the summons and

---

[1]   Citibank purchased AT&T Universal in January 2002 and continues to issue credit card products under the AT&T brand name. (Paper 34, Ex. 2, Richter Aff. ¶ 3).

[2]   Defendants assert that Citibank claimed the account was accruing interest at 29.74%. The credit card agreement provided for a maximum default rate which, at the time of sale, was prime plus 23.99%, which equaled 29.75%. (Paper 34, Ex. 2, Richter Aff. ¶ 5).

complaint back to PSC for service by a private process server. Katie Dodson, a paralegal with PSC, used Protrack Process Service, Inc. ("Protrack") to effectuate service on Mr. Mateti.  Protrack assigned the task of serving Mr. Mateti to an independent contractor, Steve Nixon.  Substitute service was purportedly completed on "Panta Matetti," on December 2, 2005.  Mr. Nixon executed an affidavit of service, filed it with the district court, and provided a copy to PSC.  Plaintiffs allege that the service affidavit executed by Mr. Nixon was undoubtedly false because, at the time Mr. Nixon purportedly effectuated service, Mr. Mateti was living in Kentucky, and the process server misspelled his last name.

Mr. Mateti never responded to the complaint filed by Activus. Subsequently, Activus filed a request for default judgment which was denied by the state court on January 13, 2006.  On March 24, 2006, affidavit judgment was entered against Mr. Mateti in the amount of $8,887.79 ($4,492.62 principal, $4,398.17 interest, and $50 costs).  Plaintiffs allege that Activus was awarded interest in the judgment to which it was not entitled by law.  PSC sent a letter on April 24, 2006 to the Springdale, Maryland address to inform Mr. Mateti of the judgment.  PSC filed a request for oral examination on May 10, 2006.  The court scheduled the oral examination for July 7, 2006.  Barbara Crawford, a paralegal at PSC, used Priority Process Servers ("Priority Process") to serve

the oral examination request on Mr. Mateti.  Priority Process assigned service of the oral examination papers to Jimmy Chidester. On July 28, 2006, Mr. Chidester filed an affidavit of service stating that he could not serve the oral examination papers because he never received a response from Mr. Mateti.  Mr. Mateti asserts that he never received the letter from PSC or the notice of the oral examination because both were sent to the wrong address.

On September 7, 2006, PSC filed a reissue of the request for oral examination.  Lisa Annadale, another paralegal at PSC, assigned the oral examination papers to ESQ Process Servers who, in turn, assigned the task of serving Mr. Mateti to Scott Miles, an independent contractor of ESQ.  Mr. Tiles filed an affidavit of service on October 31, 2006 stating that service of the oral examination papers was made by substitute service on Nivai Mateti at the Springdale, Maryland address.  The oral examination was set for November 17, 2006.  Mr. Mateti failed to appear.

On December 27, 2006, PSC filed a request for show cause order for contempt.  The court issued the order to show cause on December 29, 2006 and sent the papers back to PSC for service of process. Ms. Annandale gave the papers to Protrack for service.  Protrack again assigned the task of serving Mr. Mateti to Mr. Nixon.  Mr. Nixon filed a proof of service on January 26, 2007 indicating that he personally served Mr. Mateti in Greenbelt, Maryland.  The

purported service affidavit incorrectly describes Mr. Mateti as a five foot six inch caucasian male, weighing over 180 pounds.

The show cause hearing was scheduled for April 6, 2007. Mr. Mateti did not attend the hearing. On April 9, 2007, PSC filed a request for garnishment of Mr. Mateti's property. A writ of garnishment was issued on April 16, 2007 and placed on Mr. Mateti's Bank of America account. Mr. Mateti contacted PSC on April 25, 2007 and spoke to Ernest Fasca about the garnishment. On May 8, 2007, Mr. Mateti filed a motion to vacate the judgment. A hearing was held on September 7, 2007 on the motion to vacate. The court vacated the judgment, quashed service of process and the garnishments, and ordered all money to be released to Mr. Mateti. Activus voluntarily dismissed the collection proceedings against Mr. Mateti on July 25, 2008. Plaintiffs allege that despite the court order and requests by Mr. Mateti's counsel to remove the garnishment from the bank account, the money has never been released.

On November 2, 2007, Plaintiffs filed a complaint in the Circuit Court for Prince George's County against Activus, Phillip Collins, PSC, Neal Markowitz, and Ernest Fasca. Counts 1-11 allege violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, counts 12-14 allege violations of the Maryland Consumer Debt Collection Act ("MCDCA"), Md. Code Ann., Com. Law § 14-202, and count 15 alleges negligence. Defendants

properly removed the case to this court on February 28, 2008 (Paper 1) and filed an answer on May 5, 2008.  (Paper 10).  The same day, the court entered a scheduling order, pursuant to which discovery would close on September 17, 2008.   On September 16, 2008, Defendants filed a motion for leave to file an amended answer to include a *bona fide* error affirmative defense, and a motion to extend the discovery deadline.  (Papers 16, 18).  The court denied Defendants' motion for leave to file an amended answer on October 22, 2008 and granted Defendants' motion to extend discovery. (Paper 30).   Thereafter, Defendants filed a motion for reconsideration related to their request to file an amended answer (Paper 31).  Plaintiffs filed a motion for extension of time to file motion to compel regarding depositions.   (Paper 33).[3] Defendants and Plaintiffs subsequently filed motions for summary judgment.  (Papers 34, 40).  In response to Defendants' motion for summary judgment, Plaintiffs voluntarily withdrew count 6 of the complaint alleging a violation of § 1692e(2)(B) of the FDCPA.[4]

---

[3]  In the motion for extension of time, Plaintiffs assert that the motion to compel would likely be shortened or eliminated altogether if Defendants' motion for reconsideration is denied.  In light of the finding the Defendants' motion for reconsideration will be denied, Plaintiffs' motion for extension of time to file motion to compel will also be denied.

[4]  Section 1692e(2)(B) prohibits "[t]he false representation of . . . any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt."

## II.  **Defendants' Motion for Reconsideration**

Defendants seek reconsideration of the October 22, 2008 order denying their motion for leave to file an amended answer to include an affirmative defense, *bona fide* error.  (Paper 30).  Defendants assert that at the time they filed the original answer, the *bona fide* error defense was not believed to be necessary because the interest rate of 29.74% was thought to be correct.  Defendants further assert that Defendants' counsel did not believe that the *bona fide* error defense was necessary in response to Plaintiff's claims of improper service.  Defendants assert that, during the course of discovery, they learned for the first time that Plaintiffs contend that the interest in the state court litigation was calculated incorrectly.

Here, there are two issues regarding the interest rate, namely: (1) whether Defendants' used the wrong rate of interest; and/or (2) whether the interest was miscalculated.  Although inartfully pled, the following allegations put Defendants on notice regarding the interest rate:

> The District Court denied Activus' original request for Judgment on Affidavit, and Activus, through Collins and PSC, re-filed the Suit as well as updated Interest Worksheets dated January 10, 2006 and on March 6, 2006, seeking the same $4,492.62 principal, but *interest in three different amounts* of $4,471.38 (Complaint form) or $4,398.17 (Interest Worksheet of Jan. 10, 2006) or $4,599.50 (Interest Worksheet - undated).

> On March 24, 2006, the District Court entered Judgment by Affidavit for Activus for $4,492.62 in principal, $4,398.17 interest, plus $50 costs, for a total judgment of $8,887.79
>
> Activus was awarded interest in the Judgment to which it was not entitled to by law
>
> Collins, PSC and Markowitz knew Activus was not entitled to the interest it was awarded
>
> On May 17, 2007 Collins and PSC filed an Opposition to Mateti's Motion to Vacate Judgment, asserting, *inter alia*, that the interest obtained in the judgment was correct, even though it exceeded the principle [sic], and that "A simple math equation" would resolve it.
>
> Collins and PSC *failed to do even the simple math* to account for the interest claimed

(Paper 1, ¶¶ 23, 27-29, 61-62)(emphasis added).

As previously explained to Defendants during the October 22, 2008 telephone conference, their tactical decision not to include the affirmative defense of *bona fide* error in their initial answer is insufficient to show good cause. *See Nourison Rug Corp. v. Parvizian*, 545 F.3d 295, 298 (4th Cir. 2008)("[A]fter the deadlines provided by a scheduling order have passed, the good cause standard must be satisfied to justify leave to amend the pleadings."). Defendants were aware prior to the deadlines set forth in the scheduling order that Plaintiffs allege an error in the interest rate and/or an error in interest calculation. Accordingly, the motion for reconsideration will be denied.

III. **Plaintiffs' Motion to Strike**

Plaintiffs filed a motion to strike two exhibits filed by Defendants in support of their motion for summary judgment. (Paper 40). Plaintiffs assert that the affidavits from Citibank and Unifund (Paper 34, Ex. 2, Richter Aff., Ex. 3, Kenney Aff.) should be stricken because each contains data, information, and testimony that was not disclosed during discovery.

A.    **Citibank Affidavit**

Plaintiffs assert that the affidavit of David Richter, a Citibank employee, includes the following new information: (1) Citibank purchased the entire AT&T Universal credit card portfolio in January 2002; (2) Mr. Mateti's account was included in the AT&T Universal card portfolio; (3) Citibank sold Unifund a portfolio of charged off credit card debts on May 27, 2005; (4) Mr. Mateti's credit card was included in the portfolio that Citibank sold to Unifund; (5) the credit card agreement in Mr. Mateti's account provided for a maximum default rate; and (6) the maximum default rate at the time of sale was prime plus 23.99% which equaled 29.75%, not 29.74%.

Plaintiffs' claim that the Citibank affidavit contains new information is inaccurate. Plaintiffs were previously informed in Activus' answer to Interrogatory #4 that "Activus Financial, LLC is a legal owner of the indebtedness of Mr. Mateti's which was originally issued through AT&T Universal and which is now

CitiBank." (Paper 40, Ex. 3, at 2). Activus' answer to Interrogatory #13 states, "Activus Financial purchased this debt on August 11, 2005 from Unifund CCR Partners who purchased the debt on May 27, 2005 from Citibank (South Dakota) National Association." (*Id.* At 5).

Additionally, as noted by Defendants, Plaintiffs' Interrogatory #1 asks: "Identify all persons who are likely to have personal knowledge of any fact alleged in the Amended Complaint or in your Answer to the Amended Complaint, state the subject matter of the personal knowledge possessed by each such person." Plaintiffs never filed an amended complaint, thus it would be impossible to answer this question. Even if the question dealt solely with the original complaint, the answer would not include Mr. Richter and Ms. Kenny because neither was involved in the alleged defective service of process.

**B.   Unifund Affidavit**

Plaintiffs correctly note that Mr. Richter's affidavit asserting that the correct interest rate is 29.75% conflicts with Activus' answer to interrogatory # 20, the Unifund affidavit, PSC's answer and supplemental answer to interrogatory # 13, and the deposition of Charles Berry, all of which state that the interest rate was 29.74%. However, the fact that Defendants have produced conflicting information during discovery does not serve as a basis to strike the affidavit. Rather, this conflicting information

should be examined in the context of the motions for summary
judgment. "[I]t is not the function of a motion to strike to
resolve conflicting evidence in the record." *Architectural Iron
Workers Local No. 63 Welfare Fund v. United Contractors, Inc.*, 46
F.Supp.2d 769, 771 (N.D. Ill. 1999).

Plaintiffs also assert that the Unifund affidavit does not
identify the individuals sending and receiving the spreadsheet
data, the creator of the spreadsheet, or describe or identify the
chain of custody of the data and/or spreadsheet.  Plaintiffs
further dispute that Kim Kenny of Unifund has personal knowledge of
the information contained in the affidavit.  Plaintiffs provide no
support for either argument.  Alternatively, Plaintiffs ask the
court to strike paragraph 5 of the Richter affidavit because the
information is new and presented after discovery.  In paragraph 5,
Mr. Richter states:

> On May 27, 2005 Citibank (South Dakota), N.A.
> sold to Unifund CCR Partners a portfolio of
> charged off credit card debts.  The credit
> card debt of Jayaprakash Mateti . . . was
> included in that portfolio.  The Card
> Agreement for this account provided for a
> maximum default rate.  The maximum default
> rate at the time of sale was Prime plus 23.99%
> which equaled 29.74%.

The information that Plaintiffs contend is new and was not
provided in discovery was actually supplied by Activus in its
answers to Plaintiffs' interrogatories.  As previously noted,
Activus' answer to interrogatory # 13, specifically addressed the

ownership of Mr. Mateti's account.  Furthermore, Activus' answer to interrogatory # 21 stated, "[i]n 2003 Mateti obtained an AT&T Universal Master Card credit card . . . .  When Mateti failed to make payments thereon, the credit card account was charged off, and the account was sold.  Activus purchased the account and referred this matter to [PSC] for collection."  Plaintiffs have not provided any reason to strike all or portions of the Citibank and Unifund affidavits.  Accordingly, the motion to strike will be denied.

## IV.  Motions for Summary Judgment

### A.    Standard of Review

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008).  In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate.  *Anderson*, 477 U.S. at 250; *JKC Holding Co. LLC v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).  The moving party bears the burden of showing that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c);

*Catawba Indian Tribe of S.C. v. South Carolina*, 978 F.2d 1334, 1339 (4th Cir. 1992), *cert. denied*, 507 U.S. 972 (1993).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *United States v. Diebold*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celetox Corp.*, 477 U.S. at 323. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 256; *Celotex Corp.*, 477 U.S. at 324. However, "[a] mere scintilla of evidence in support of the nonmovant's position will not defeat a motion for summary judgment." *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 536 (4th Cir. 1997), *cert. denied*, 522 U.S. 810 (1997). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

When faced with cross-motions for summary judgment, as in this case, the court must consider "each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003)(internal quotation marks omitted). *See also havePower, LLC v. Gen. Elec. Co.*, 256 F.Supp.2d 402, 406 (D.Md. 2003)(citing 10A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2720 (3[d] ed. 1983)). The court reviews each motion under the familiar standard for summary judgment, *supra*. The court must deny both motions if it finds there is a genuine issue of material fact, "[b]ut if there is no genuine issue and one or the other party is entitled to prevail as a matter of law, the court will render judgment." 10A Federal Practice & Procedure § 2720.

**B. Analysis**

Defendants argue that they are entitled to summary judgment for the following reasons: (1) there has been no allegation that Mr. Faska or Mr. Markowitz violated the FDCPA or Maryland law; (2) Plaintiff Chekkilla was not sued in the district court action and has not set forth any claim in this case and cannot be considered a proper party plaintiff; (3) Plaintiffs' FDCPA claims were filed beyond the one year statute of limitations; (4) even if the claim is not barred by the statute of limitations, Defendants have a *bona fide* error defense which bars recovery; and (5) whether service of process was valid, improper, or fraudulent, it was performed by an

15

independent process server and not under the direction of the defendants.

Although unclear, Plaintiffs appear to assert that they are entitled to summary judgment on counts 1-5 and 7-14. As noted above, Plaintiffs voluntarily withdraw count 6 (false representation of compensation). Plaintiffs do not seek summary judgment on count 15 (negligence).

**1.   Defendants Faska and Markowitz**

Defendants assert that Plaintiffs allege only two acts committed by Defendants Faska and Markowitz. The only specific allegations regarding these Defendants are: (1) Mr. Markowitz appeared as counsel for Activus to argue the motion to vacate judgment; and (1) Mr. Faska participated in a three-way conference call with Mr. Mateti and Charles Berry on April 26, 2007 immediately after Mr. Mateti's bank account was garnished. These allegations are wholly insufficient to impose liability under the FDCPA and Maryland law.

Furthermore, Plaintiffs fail to provide any evidence relating to either Mr. Faska or Mr. Markowitz. Plaintiffs asserts that Mr. Markowitz ratified all of the conduct leading up to the September 7, 2007 hearing. However, Plaintiffs provide no evidence regarding the extent of Mr. Markowitz's participation in the alleged fraudulent service of process.

Similarly, Plaintiffs fail to show how Mr. Faska's participation in one phone call to respond to Mr. Mateti's inquiry regarding the garnished account violated the FDCPA and Maryland law. Plaintiffs argue that Mr. Faska ratified the alleged improper service of process, but fail to allege any facts or point to any evidence that Mr. Faska knew about the alleged improper service in the first place. Indeed, Plaintiffs submit that "Defendant Faska was less involved than the other defendants, but once involved, he ratified the judgment and underlying conduct." (Paper 43, at 20). Plaintiffs' bald, conclusory assertions are wholly insufficient. Accordingly, summary judgment will be granted in favor of Defendants Markowitz and Faska on all counts.

### 2.  Plaintiff Chekkilla

Defendants argue that no collection action was taken against Ms. Chekkilla and her only involvement in this case was accompanying her husband to court. Defendants conclude that Ms. Chekkilla's claim is without merit and judgment should be entered in favor of Defendants on all counts. Plaintiffs allege that Ms. Chekkilla had to come to court for a hearing and had to help her husband Mateti in coping with and understanding the legal proceedings brought against him and, as a result, suffered damages, including mental and/or emotional stress and confusion. (Paper 2, ¶¶ 95-96). Plaintiffs further allege that Ms. Chekkilla incurred

17

fees charged by her bank during a garnishment and account freeze and had to move from Kentucky to New Jersey due to the bank freeze.

Plaintiffs do not respond to Defendants arguments and provide no reason that Ms. Chekkilla should remain in this case. Indeed, Ms. Chekkilla was not the debtor and no collection actions were taken against her. Plaintiffs have not alleged any facts to demonstrate that Defendants engaged in unlawful debt collection practices against Ms. Chekkilla. Therefore, summary judgment will be granted in favor of Defendants on all counts with respect to Ms. Chekkilla.

### 3.   Statute of Limitations

As a threshold matter, it is necessary to determine the extent to which Plaintiffs' claims are barred by the applicable statute of limitations. As noted above, Plaintiffs filed this action on November 2, 2007. Defendants maintain that Plaintiffs' lawsuit is barred by the one year statute of limitations under the FDCPA. Defendants contend that Plaintiffs' claims are twofold: (1) the affidavit of service filed by Protrack on December 2, 2005 was either incorrect or fraudulent; and (2) the interest rate sought by Defendants was incorrect. Defendants assert that the lawsuit filed against Mr. Mateti, the filing of the affidavits of service of process, and the entry of judgment against Mr. Mateti occurred more than one year prior to Plaintiffs' lawsuit. Plaintiffs contend that, due to the alleged fraudulent service of process in

connection with the state court litigation, they did not become aware of the debt collection activity and the state court lawsuit until the bank account was garnished in April 2007.

Under the FDCPA, "[a]n action to enforce any liability created by this subchapter may be brought . . . within one year from the date on which the violation occurs."   16 U.S.C. § 1692k(d). "Generally, the statute of limitations begins to run when a communication violating the FDCPA is sent." *Akalwadi v. Risk Mmgt. Alternatives, Inc.*, 336 F.Supp.2d 492, 501 (D.Md. 2004)(citing *Peoples v. Wendover Funding*, 179 F.R.D. 492, 499 (D.Md. 1998); *Mattson v. U.S. West Commc'ns, Inc.*, 967 F.2d 259, 261 (8th Cir. 1992)(stating that a cause of action accrues under the FDCPA when creditor mails collection letter because that date was last opportunity creditor had to comply with the FDCPA)).   Plaintiffs recognize that a one year statute of limitations applies to their FDCPA claims.[5]  (Paper 43, at 20).   As such, the court will limit analysis of Plaintiffs' claims to events that occurred on or after November 2, 2006.

Plaintiffs allege that Defendants engaged in fraudulent service of process in February 2007.   Plaintiffs also allege that

---

[5]  Plaintiffs erroneously note, "[a]ssuming a one year statute of limitations under the FDCPA, all acts *up to and including* November 1, 2006 are within the limitations period." (Paper 43, at 20)(emphasis added).   However, because Plaintiffs' complaint was filed on November, 2, 2007, the one year limitations period would include all acts *on or after* November 2, 2006.

Defendants PSC, Collins, Markowitz, and Faska engaged in violations of the FDCPA on behalf of Activus in April 2007, within the one-year statute of limitations period.  Therefore, Defendants have not shown as a matter of law that Plaintiffs' suit, filed on November 2, 2007, was untimely.

### 4.  Independent Process Server

Defendants assert that they cannot be held liable for the alleged fraudulent service of process because those acts were performed by independent process servers.  The FDCPA definition of "debt collector" specifically excludes "any person while serving or attempting to serve legal process on any other person in connection with the judicial enforcement of any debt."  15 U.S.C. § 1692a(6)(D).  Defendants rely on the process server exemption to shield themselves from liability for the alleged falsification of the service documents.

"Contrary to [Defendants'] argument, however, the exemptions do not exclude the actions of third persons such as [PSC] who utilize these exempt individuals to violate the act."  *Alger v. Ganick, O'Brien & Sarin*, 35 F.Supp.2d 148, 153 (D.Mass. 1999).  As explained by the United States Court of Appeals for the Second Circuit:

> The language of § 1692a(6)(D) extends the exemption to a person only "while serving or attempting to serve legal process."  *See also* S.Rep. No. 95-382, at 3-4 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1697-98 ("The term debt collector is not intended to include . .

20

. [process] servers."). By exempting from
liability under the FDCPA those individuals
whose involvement in a debt collection
communication was limited to serving the
communication on the consumer—in effect, to
being messengers—Congress did not compromise
the strength of the FDCPA's protections. To
read Congress, instead, as having carved out a
wholesale exemption for anyone who prepares a
communication—no matter how violative of the
safeguards that the FDCPA affords debtors—just
because the communication is eventually served
on the consumer as a prerequisite to beginning
a court proceeding, would not only stretch the
statutory language; it would also
significantly impede the statute from
remedying the "mischief" to which it was
addressed.

*Romea v. Heiberger & Assoc.*, 163 F.3d 111, 117 (2$^{\text{d}}$ Cir.
1998)(footnote omitted). Thus, Defendants cannot rely on the
exemption to insulate themselves from liability if they either gave
the process server incorrect address information or themselves
committed a violation in the papers to be served or later
improperly relied on affidavits of service that were fraudulent.

While Defendants assert, and Plaintiffs do not dispute, that
PSC used an independent contractor to effectuate service on Mr.
Mateti, that is not the end of the inquiry. PSC prepared the court
documents and supplied each process server with a summons and
complaint. (Paper 34, Ex. 21, Collins Aff. ¶¶ 7, 10). Defendants
provided the allegedly false or incorrect information to the person
who was to effectuate service. Furthermore, even if the process
servers were in some sense independent contractors, Defendants
could not blindly accept and rely on fraudulent affidavits of

service, particularly when they arguably had information calling those affidavits into question.

**5.    Fair Debt Collection Practices Act**

**a.    Counts 1 - 4 - §§ 1692d-1692g**

Plaintiffs allege violations of §§ 1692d, 1692e, 1692f, and 1692g, but fail to allege which facts in the ninety-seven paragraph background section of the complaint support a violation of any of these sections of the FDCPA.    Rather, Plaintiffs assert that "[c]ounts 1-4 plead the general subsections of the FDCPA.    If Plaintiffs prove a violation of a lower sub-portion of these subsections . . . then they have proven the higher level subsection."    (Paper 43, at 2).    The court will not engage in speculation and conjecture to determine which facts are applicable to Plaintiffs' claims in counts 1-4.    Plaintiffs' response is wholly insufficient to defeat Defendants' motion for summary judgment.    Accordingly, summary judgment will be granted in favor of Defendants on count 1-4.

**b.    Count 5 - § 1692e(2)(A)**

Section 1692e(2)(A) prohibits "[t]he false representation of . . . the character, amount, or legal status of any debt." Plaintiffs assert that Defendants misrepresented the amount of the debt during the state court litigation, including the amount of interest.    Defendants argue that it is undisputed that Mr. Mateti admits that he owes the credit card debt.    However, the parties

22

dispute whether the interest rate is 29.74% or 29.75%, and whether
the interest rate was miscalculated.   As discussed above in the
context of Plaintiffs' motion to strike, because Defendants present
conflicting evidence regarding the amount of the interest rate,
genuine issues of material fact remain regarding the correct
interest rate.   Accordingly, both motions for summary judgment on
count 5 will be denied.

c.   **Count 7 - § 1692e(5)**

Section 1692e(5) prohibits "threat[ening] to take any action
that cannot legally be taken or that is not intended to be taken."
Although unclear, Plaintiffs appear to assert that because the
interest rate on the credit card was allegedly incorrect, Activus
could not legally collect the debt.   However, Plaintiffs fail to
identify *any* threat by Activus or any other Defendant against Mr.
Mateti.   Defendants provide evidence that Activus did indeed
purchase Mr. Mateti's account and therefore was legally entitled to
collect the debt.   (Paper 34, Ex. 2, Citibank Aff. ¶ 3; *Id.* Ex. 3,
Unifund Aff. ¶ 3; *Id.* Ex. 4, Berry Aff. ¶ 3).   Plaintiffs'
unsupported assertions regarding ownership of the account are
insufficient to defeat Defendants' motion for summary judgment.

d.   **Count 8 - § 1692e(8)**

Section 1692e(8) prohibits "[c]ommunicating or threatening to
communicate to any person credit information which is known or

which should be known to be false, including the failure to communicate that a disputed debt is disputed."

As Defendants correctly note, Plaintiffs fail to allege any facts or provide any arguments to support their allegation that Defendants Markowitz, Fasca, Collins, or PSC violated § 1692e(8). Plaintiffs assert that Activus violated this section by sending communication to the credit bureaus regarding the credit card account without communicating that the debt was disputed. Activus did indeed report the debt to the Equifax credit reporting agency. However, Plaintiffs' claim fails because there is no evidence that Mr. Mateti ever disputed the debt.

### e.   Count 9 – § 1692e(10)

Section 1692e(10) prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." Plaintiffs assert that Defendants Activus, PSC, and Collins used false and deceptive service of process documents to obtain a judgment against Mr. Mateti and subsequent garnishment of Plaintiffs' bank account.

Defendants maintain that they neither prepared the affidavits of service nor controlled the acts of the private process server. However, for reasons stated above, Defendants cannot escape liability by attempting to shift the blame to the process server. It is undisputed that PSC and Collins prepared the summons and

complaint in the state court litigation and supplied the documents
to the process servers.   The complaint was subsequently sent to
Activus to sign the affidavit on the complaint form.   Mr. Berry of
Activus signed the affidavit and returned it to PSC to file suit.
(Paper 34, Ex. 4, Berry Aff. ¶ 6; Ex. 21, Collins Aff. ¶ 7).   There
are genuine issues of material fact related to whether PSC and
Collins knowingly provided the process servers with the wrong
addresses.   Additionally, there are genuine issues of material fact
regarding whether Activus signed the complaint form knowing that
the address listed for Mr. Mateti was incorrect.   Accordingly, both
motions for summary judgment will be denied on count 9.

   **f.   Count 10 - § 1692f(1)**

Section 1692f(1) provides:

> A debt collector may not use unfair or
> unconscionable means to collect or attempt to
> collect any debt.   Without limiting the
> general application of the foregoing, the
> following conduct is a violation of this
> section:
>
> (1) The collection of any amount
> (including interest, fee, charge, or expense
> incidental to the principal obligation) unless
> such amount is expressly authorized by the
> agreement creating the debt or permitted by
> law.

Again, Plaintiffs fail to identify specifically which actions
allegedly violated § 1692f(1).   Defendants assume that Plaintiffs
are referring to the incorrect amount of interest obtained in the
state court judgment.   Plaintiffs respond that Defendants have

failed to produce any agreement showing permission to collect 29.74% interest.   Plaintiffs also assert that Defendants have failed to show that a non-national bank like Activus cannot collect more than the Maryland legal limit of 6% pre-judgment interest.

In Maryland, the legal rate of pre-judgment interest is six (6) per cent per annum.  Md. Const. art III. § 57; *Crystal v. West & Callahan, Inc.*, 328 Md. 318, 342 (1992).  Pre-judgment interest is allowable as a matter of right when the obligation to pay and the amount due had become certain, definite, and liquidated by a specific date prior to judgment, so that the effect of the debtor's withholding payment was to deprive the creditor of the use of a fixed amount as of a known date.  *Pulte Home Corp v. Parex, Inc.*, 174 Md.App.681, 771 (2007); *Gordon v. Posner*, 142 Md.App. 399, 438 (2002).  By way of example, such a right would arise under written contracts to pay money on a date certain, or in conversion cases where the value of the chattel converted is readily ascertainable. *Buxton v. Buxton*, 363 Md. 634, 656 (2001).

Defendants agree that Activus is not a national bank, but argue that the credit card agreement specifically provides the interest rate.  Indeed, Plaintiffs submit that Mr. Mateti's credit card had an Annual Percentage Rate of 23.99%.  (Paper 43, Exs. 1, 2, 3).  As noted above, there are genuine issues of material fact regarding whether the incorrect amount of interest was applied during the state court litigation.

**g.   Count 11 - § 1692g(b)**

Section 1692g(b) provides, in relevant part:

> If the consumer notifies the debt collector in
> writing within the thirty-day period described
> in subsection (a) of this section that the
> debt, or any portion thereof, is disputed . .
> . the debt collector shall cease collection of
> the debt, or any disputed portion thereof,
> until the debt collector obtains verification
> of the debt or a copy of a judgment . . . .

Defendants maintain that Mr. Mateti never disputed the debt or requested information regarding the debt in writing.   As noted above, Plaintiffs provide no evidence that Mr. Mateti disputed the debt in writing.   Accordingly, Defendants' motion for summary judgment on count 11 will be granted.

**6.   State Law Claims**

**a.   Counts 12-14 - Maryland Consumer Debt Collection Act**

The Maryland Consumer Debt Collection Act ("MCDCA"), codified at Md. Code Ann., Com. Law II §§ 14-201 - 14-204, "protects consumers against certain threatening and underhanded methods used by debt collectors in attempting to recover on delinquent accounts." *Spencer v. Hendersen-Webb., Inc.*, 81 F.Supp.2d 582, 594 (D.Md. 1999).   In counts 12, 13, and 14, Plaintiffs allege, without pointing to any specific facts in the complaint, that Defendants violated the following sections of the MCDCA: § 14-202(3)(stating that a debt collector may not "[d]isclose or threaten to disclose information which affects the debtor's reputation for credit

27

worthiness with knowledge that the information is false"); §
14-202(6)(stating that a debt collector may not "[c]ommunicate with
the debtor or a person related to him with the frequency, at the
unusual hours, or in any other manner as reasonably can be expected
to abuse or harass the debtor"); and § 14-202(8)(stating that a
debt collector may not "[c]laim, attempt, or threaten to enforce a
right with knowledge that the right does not exist").

In counts 12 and 14, Plaintiffs argue that Defendants knew or
should have known that the interest rate, and calculations from
those rates, were wrong and inflated.   Plaintiffs argue that
Defendants violated § 14-202(3) by making multiple false assertions
of incorrect interest allegedly owed and violated § 14-202(8) by
collecting interest at an incorrect rate.

"Unlike the FDCPA, the MCDCA is not a strict liability
statute."   *Akalwadi*, 336 F.Supp.2d at 511.   Thus, to prove
liability under §§ 14-202(3) and (8), Plaintiffs must prove some
knowledge component with regard to Defendants' actions.   *See*
*Akalwadi*, 336 F.Supp.2d at 511; *Spencer*, 81 F.Supp.2d at 595.   As
noted in *Spencer*, 81 F.Supp.2d at 595, "defendants can be found
liable under paragraphs (3) or (8) of the MCDCA for disclosing
information or threatening to enforce a right with actual knowledge
or reckless disregard as to the falsity of the information or the
existence of the right."

28

Defendants present evidence demonstrating that they believed that the interest rate was correct based on information provided by Activus.  Prior to the sale from Citibank to Unifund, Citibank supplied Unifund an electronic data sheet containing all relevant account data.  The data provided that Citibank sold the account to Unifund with an interest rate of 29.74%.  Unifund then sold the account to Activus using that same data.  Activus in turn provided that data sheet to PSC to use in preparing the lawsuit.  (Paper 34, Ex. 21, Collins Aff. ¶ 6).  Plaintiffs have not provided any evidence that Defendants had actual knowledge or acted with reckless disregard regarding the interest rate or interest rate calculation.

With respect to count 13, Defendants assert that Mr. Mateti was contacted by phone only twice regarding the debt and that neither phone call was harassing or abusive.  Plaintiffs respond that "[i]t should go without saying that all of the Defendants' actions" violate § 14-202(6).  (Paper 43, at 23).  Plaintiffs' failure even to address Defendants' argument is wholly insufficient to support their motion for summary judgment, let alone defeat Defendants' motion for summary judgment.  Two telephone calls is not even remotely adequate to impose liability under this section. Therefore, summary judgment will be granted in Defendants favor on counts 12-14.

**b.    Count 15 - Negligence**

Plaintiffs contend that all Defendants owed a duty to conform to the standard of care in debt collection, judgment enforcement, and generally for the protection of both Plaintiffs.  As noted above, Defendants Markowitz and Faska are no longer a part of this lawsuit.  Additionally, Plaintiffs does not appear to advance a negligence claim against Defendant Activus.  Plaintiffs' negligence claim is against PSC (the law firm) and Collins (an attorney). Plaintiffs assert that all Defendants breached the applicable standard of care, and this breach was the proximate cause of Plaintiffs' damages.  Plaintiffs cite no authority from Maryland or any other jurisdiction that recognizes a duty of care in the context of debt collection.

Defendants assert that the negligence claim based on alleged improper service of process must fail because Plaintiffs cannot establish that Defendants owed a duty to Plaintiffs.  First, Defendants argue that there is no duty to control a third person's conduct, unless there is a special relationship between the actor and the person injured.  Defendants maintain that there is no contractual relationship between Plaintiffs and any Defendants.

To state a claim for negligence or malpractice against an attorney in Maryland, Plaintiff "must allege: 1) the attorney's employment; 2) his neglect of a reasonable duty; and 3) loss to the client proximately caused by that neglect of duty." *Dow v. Jones*, 232 F.Supp.2d 491, 495 (D.Md. 2002)(quoting *Roginsky v. Blake*, 131 F.Supp.2d. 715, 719 (D.Md. 2000)(internal citations omitted),

30

aff'd, 238 F.3d 414, 2000 WL 1853370 (4th Cir. 2000)(Table)).   In Maryland, an attorney "only owes a duty to his clients or third party beneficiaries of the attorney-client relationship." *Schatz v. Rosenberg*, 943 F.2d 485, 492 (4th Cir. 1991), *cert. denied*, 503 U.S. 936 (1992).   Thus, a plaintiff must, as part of a claim, allege the existence of "an employment relationship" with the attorney.   *Wong v. Aragona*, 815 F.Supp. 889, 896 (D.Md. 1993) (quoting *Flaherty v. Weinberg*, 303 Md. 116, 134 (1985)), *aff'd*, 61 F.3d 902 (4th Cir. 1995)(Table); *accord, Murphy v. Comptroller of the Treasury*, 207 F.Supp.2d 400, 404 (D.Md. 2002)(plaintiff must "prove an employment relationship with the attorney before an action can be maintained").

Plaintiffs' negligence claim fails at the first step because Plaintiffs cannot establish that Defendants owed them a duty of care.   Plaintiffs do not allege any facts or provide evidence demonstrating that a special relationship existed giving rise to Defendants PSC and Collins owing a duty to Plaintiffs. Accordingly, Defendants' motion for summary judgment on count 15 will be granted.

## V.   Conclusion

For the foregoing reasons, Plaintiffs' motions will be denied and Defendants' motion will be granted in part and denied in part. A separate Order will follow.

_____
/s/
DEBORAH K. CHASANOW
United States District Judge

31